United States Bankruptcy Court
For The District of Puerto Rico

| IN RE: | Case No. 16-09234 (ESL) |
|---|---|
| LAURIE L. MORRISON | CHAPTER 11 |
| *Debtor* | |

**OBJECTION TO PROOF OF CLAIM NO. 1 FILED BY WILMINGTON TRUST, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO CITIBANK, N.A., AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II TRUST 2007-AR3, MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2007-AR3**

**TO THE HONORABLE COURT**:

**COMES NOW,** Debtor, through her undersigned counsel, and respectfully **STATES** and **REQUESTS**:

1. On November 22, 2016, Debtor filed a voluntary petition for relief pursuant to 11 U.S.C. Chapter 11.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. 157(b)(2). Further, even if, *arguendo*, this were a non-core proceeding due to the issues of Maryland law involved, pursuant to the U.S. Supreme Court, the act of the subject creditor in filing a proof of claim on January 23, 2017 constitutes its consent to the jurisdiction of this Court to adjudicate all matters pertaining to the claim itself. Claim 1 in Claims Registry; *See Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932 (2015) (the act of filing a proof of claim

constitutes a waiver of the right of the claimant to argue that the bankruptcy court lacks jurisdiction over matters that would otherwise be non-core in nature); *See also, similarly, In re Cruisephone, Inc.*, 278 B.R. 325 (Bankr. E.D.N.Y 2002) (the filing of a proof of claim has the effect of bringing all related legal issues into the ambit of the bankruptcy court).

3. The statutory predicates for the relief sought herein are Sections 102, 105 and 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

4. The Court set March 23, 2017, as the deadline for filing proofs of claim for all creditors, except for governmental entities, which was set May 22, 2017.

5. Prior to the commencement of this case, Debtor maintained, in the ordinary course of her business, books and records that reflected, among other things, the amounts owed to her creditors.

6. Debtor has conducted a review of Proof of Claim No. 1 filed by Wilmington Trust, National Association ("WT") and has determined that same is objectionable, as follows:

| POC No. | Claimant | Total Amount Claimed | Amount Expected to be Allowed | Reason for Objection |
|---|---|---|---|---|
| 1 | WT | $2,151,598.44 (secured) | $00.00 | Please see below memorandum. For the reasons set forth therein, POC No. 1 must be disallowed. |

## RELEVANT BACKGROUND

7. In 2002, Debtor closed on the purchase of a property that is located at 5605 Bradley Boulevard, Bethesda, Maryland 20814 (hereinafter referred to as the "Subject Property").

8. On March 15, 2007, as part of the refinancing of the loan over the Subject Property, Debtor executed several documents, including an Adjustable Rate Note, not under seal, and a Deed of Trust, under seal, which are now encumbering the Subject Property. **See attached Note and Deed, which were filed in support of WT's Proof of Claim.** The Property's legal description, as per the Deed, is as follows:

> Lot numbered Eighteen (18) in Block numbered Eight-B (8-B) in subdivision known as "First Addition to Section Two, BRADLEY HILLS", as per plat recorded in Plat Book 32 at Plat 2017, among the Land Records of Montgomery County, Maryland.
>
> AND
>
> Being the rear Twenty (20) feet of Lot Numbered Twenty (20) in Block Numbered Eight-B (8-B), "First Addition to Section Two, BRADLEY HILLS" as shown on Plat filed among the Land Records of Montgomery County, Maryland in Plat Book 70 at Plat 6604 and more particularly described as follows:
>
> BEGINNING for the same at the southeast corner of said Lot numbered Twenty (20) in Block numbered Eight-B (8-B), and running thence with the rear line of said lot, South 53 degrees 8'16" West 78.88 feet to intersect a curve to the right having a radius of 7,466.34 feet; thence 20.00 feet along the arc of said curve (chord bearing and length north 37 degrees 7'8" West 20.00 feet) thence running through and across said Lot North 53 degrees 8'16" East

> 82.82 feet to intersect the east line of said lot; thence with part of said east line South 25 degrees 25'44" East 20.40 feet to the place of beginning. Containing 1,617 square feet of land, more or less.

**See attached Deed.**

9. The Note and Deed were formalized between Debtor and Countrywide Bank, FSB[1] over the Subject Property in the amount of $1,408,000.00. **See attached Note and Deed.**

10. The Note and Deed were recorded in the Montgomery County Clerk's Office on May 25, 2007. **See attached Deed.**

11. At some point in time after May 25, 2007, Debtor allegedly defaulted on the Note.

12. This led to a foreclosure action being filed by WT in Montgomery County Circuit Court, in the case styled *Edward S. Cohn, Substitute Trustee, et al. versus Laurie L. Morrison, No. 325721-V*, on the date of January 20, 2010. Debtor resided at the Subject Property at the time of the filing of this suit. **See attached Order to Docket Complaint and pertinent supporting documents.**

13. Debtor appeared in said matter and filed a motion to dismiss on procedural grounds, including[2]: (1) claiming a mortgage debt which exceeded

---

[1] At some point in time after the closing, upon information and belief, the subject Deed and Note were purchased by WT either directly from Countrywide or from another entity.

[2] These procedural defects, based on Maryland law, are not in dispute for the purposes of this Objection. Thus, they will not be discussed in detail so as not to

the statutory maximum and (2) failing to meet all prerequisites of a valid Notice of Intent to Foreclose. Debtor's motion was granted; this first foreclosure action was dismissed on the date of May 20, 2010. **See attached Motion to Dismiss & Dismissal Order.**

14. A second foreclosure action was then filed by WT, in the case styled *Edward S. Cohn, Substitute Trustee, et al. versus Laurie L. Morrison, No. 333907-V*, on the date of June 20, 2010. The same documents in support that were found to be procedurally inadequate in the first action were again submitted. Debtor resided at the Subject Property at the time of the filing of this suit. **See attached Order to Docket Complaint and pertinent supporting documents.**

15. Debtor once again appeared and filed a motion to dismiss, asserting the same procedural grounds as her previously granted motion. This second motion to dismiss was granted and the second foreclosure action was dismissed on the date of July 28, 2010. **See attached Motion to Dismiss and Dismissal Order.**

16. Over four years later, on August 8, 2014, WT filed a third foreclosure action, submitting the same documents in support from the two prior dismissed cases in the case styled *Kristine D. Brown, Substitute Trustee,*

---

confuse the pertinent issues at hand. We point them out for the sole purposes of providing background for this Court's understanding and illustrating that the foreclosure suits in 2010 began the running of the controlling Statutes of Limitations described herein.

*et al. versus Laurie L. Morrison, No. 394071-V*. **See attached Order to Docket Complaint and pertinent supporting documents.**

17. The costs and stress involved in yet <u>another</u> litigation over the Subject Property contributed to Debtor's decision to seek bankruptcy protection.

18. On November 22, 2016, Debtor filed her Voluntary Petition under Chapter 11[3]. In said Petition, the Subject Property is listed in Schedule A and recognizes the above described Note and Deed over same. The debt related to said Note and Deed is classified as "disputed". *See* Docket No. 1.

19. The Petition also listed the third foreclosure action in the Statement of Financial Affairs as a legal claim that must cease due to the Automatic Stay protections afforded to debtors under the Bankruptcy Code. *See* Docket No. 1.

20. WT was notified of the Petition soon thereafter and ceased its collection efforts.

21. On January 23, 2017, WT filed Proof of Claim 1 in the secured amount of $2,151,598.44, alleging entitlement to principal, interest and other fees and costs. The above discussed Note and Deed were attached in support. The listed postal address for notifications was: Nationstar Mortgage, LLC, P.O. Box 619096, Dallas, TX 75261-9741. *See* Claim 1-1 in Claims Registry.

---

[3] Said Petition was filed in this district because Debtor relocated to Puerto Rico on March 12, 2015.

22. For the reasons set forth below, WT's legal right to attempt to collect from Debtor under the above described Note and Deed has extinguished; hence its Proof of Claim must be disallowed in its entirety.

## LAW AND ARGUMENT

23. The legal basis for Debtor's Objection arises from the following sections of law: 11 U.S.C. § 102; 11 U.S.C. § 105; 11 U.S.C. § 502; FRBP 3007; Md. Code, Cts. & Jud. Pro (CJP) § 5-101, 102(c)(2); and Md. Code, Real Property (RP) § 7–105.13(b).

**I. The Applicable Statutes of Limitations Have Passed, Thus Extinguishing WT'S Legal Right to Collect from Debtor Any Debt Under the Subject Note and Deed.**

A. STATEMENT OF DEBT ACCELERATED THE NOTE.

24. Acceleration is defined to mean "[t]he advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately." BLACK'S LAW DICTIONARY 11 (7th ed. 1999). In the first foreclosure action, a Statement of Debt and Right to Foreclose was submitted in support. **See attached Statement of Debt and Right to Foreclose**. It affirms a ". . . debt due and owing on the note . . ." It also affirms that, because Debtor is in default, WT has the right to foreclose on the "Principle Balance Due" of $469,120.96 and "Interest per diem" of $212,686.87, amongst other items. The Statement concludes with a total balance due as of February 1, 2010 of $1,698,986.35.

25. Consequently, the Note was accelerated under the Deed because WT chose to require immediate payment in full of all sums secured by said Security Instrument, by way of foreclosure.

26. We must note that, paragraph 19 of the Deed describes the "Borrower's Right to Reinstate After Acceleration." **See attached Deed at paragraph 19**. That is, Debtor can reinstate the loan by paying WT sums that would be due if no acceleration had occurred. Accordingly, the Notice of Intent To Foreclose from the first foreclosure action states: "Total Amount Owed (to reinstate loan as of the date of this letter): $117,896.17." **See attached Notice of Intent To Foreclose**. No such reinstatement has ever occurred in our case.

B. ACCELERATION BEGAN RUNNING OF LIMITATIONS PERIODS.

27. When WT accelerated the loan, the Statutes of Limitations began to run. It has been consistently ruled that when the holder of a Note, such as WT, takes positive action indicating that he has elected to exercise the acceleration option, then the full amount of the unpaid balance of principal and accrued interest becomes immediately due and payable and the Statute of Limitations begins to run from that time. *Santini v. Fritkin*, 240 Md. 542, 544-5, 214 A,2d 578 (1965); *Allied Funding v. Huemmer*, 96 Md. App. 759, 764, 626 A.2d 1055 (1992). This is because the option given the holder of a Note to accelerate the due date of the principal upon any default is exercised by its choice to foreclose. *Id*. That is, the unequivocal, overt act of filing foreclosure

126609002\00293226.v1

proceedings for the collection by sale of the subject collateral property of the whole amount of principal which had been advanced, with interest, evidences that acceleration has been activated. *Id*.

28. We emphasize that the dismissals of the first two foreclosure actions for procedural reasons did not avoid application of the Statutes of Limitations. In this regard, courts have ruled that procedural incidents such as, for example, a defective notice of judgment, do not prevent the running of the Statutes of Limitations. *Id*.

29. In *Allied Funding*, the lienholder argued that the Statute of Limitations on its guaranty agreement did not begin to run from the date of the judgment because the borrower did not receive notice of the judgment and, therefore, the judgment had never been entered. *Id. at 764*. Nonetheless, the court found that such an argument lacked merit. *Id*. In proceeding to have judgment entered on the Note, it was found that the lienholder took positive action to collect the unpaid balance of the principal obligation. *Id*. The court thus concluded that the lienholder could not later, to prevent the running of the Statute of Limitations, rely on some alleged defect in the very legal process that it instituted. *Id*.

30. Likewise, the procedural dismissals in the two foreclosure suits cannot act to prevent the running of the applicable Statutes of Limitations period; there is no procedural argument that WT can present to defeat our Objection in this regard. That is, WT cannot attempt to use the procedural

deficiencies of its two foreclosure suits to its benefit now and cite to them as evidence that the Statutes of Limitations never began to run against it.

31. Finally, and most importantly, since the alleged default was never cured in our case, no reinstatement ever occurred; the Statutes of Limitations were never restarted or prevented from running at any point in time.

C. STATUTE OF LIMITATIONS IS 3 YEARS FOR NOTE & DEED.

32. As explained above, WT filed two separate foreclosure actions in 2010. Both cases were dismissed, without appeal, in said year. In the first 2010 foreclosure, the subject Note was accelerated by a demand for full payment filed at foreclosure inception on January 20, 2010.

33. Well over four years later, on August 8, 2014, WT filed a third foreclosure action, utilizing the same documents in support. Thus, as we now explain below, the controlling Statutes of Limitations defeat WT'S claim filed in the instant bankruptcy matter.

34. The subject Note without seal, is a simple contract subject to the default limitation period of three years. Md. Code CJP § 5-101. The subject Deed of Trust, with seal, is a specialty contract but also subject to a three-year limitation period because it involves an owner-occupied residential property. Md. Code CJP § 5-102(c)(2). It is of note that, for computing the limitation period under the enactment, the time for determination of whether a residential property is owner-occupied is the date when the foreclosure action is filed. Md. Code, RP § 7–105.13(b).

35. When the prior two foreclosure actions were filed, and dismissed in 2010, it is without dispute that Debtor was an owner-occupant of the residential Subject Property. It is from those 2010 actions that the three-year limitation period began to run.

36. In our case, the 2010 foreclosure actions sought foreclosure of an owner-occupied residential Deed, signed under seal. **See attached Deed**. Thus, the Deed falls under the three-year limitation of Md. Code CJP § 5-102(c)(2).

37. As to the Note, which was not signed under seal and constitutes a simple contract, the general default three-year Statute of Limitations for civil actions as set out under Md. Code CJP § 5-101 is applicable. **See attached Note**.

38. Accordingly, the Statutes of Limitations began to run on January 20, 2010, when WT filed suit for the entire balance due in the first foreclosure suit. A similar acceleration was declared in the second 2010 foreclosure. Regardless of what date is applied, it was not until some 4 years later that WT attempted to collect under the subject Deed and Note with the filing of its third foreclose suit, outside of the limitations periods.

## CONCLUSION

39. In sum, the applicable 3-year Statutes of Limitations have passed as to the subject Deed and Note. Md. Code CJP §5-101, RP § 5-102(c)(2), RP § 7–105.13(b).

126609002\00293226.v1

40. WT's legal right to collect from Debtor for any debt under said Note and Deed has extinguished; hence WT's Proof of Claim must be disallowed in its entirety.

**WHEREFORE**, for the reasons set forth herein, it is respectfully requested that Proof of Claim No. 1 be disallowed.

## NOTICE

Within thirty (30) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this objection has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an answer or other appropriate response to this objection with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no answer or other response is filed within the time allowed herein, the objection will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Office of the US Trustee and to all CM/ECF participants, and by regular mail to **Wilmington Trust, National Association, ATN: Nationstar Mortgage,**

126609002\00293226.v1

**LLC**, P.O. Box 619096, Dallas, TX 75261-9741.

San Juan, Puerto Rico, this 23rd day of May, 2017.

        **S/PAUL HAMMER**
        **USDC-PR 228306**
        Estrella, LLC
        PO Box 9023596

        San Juan, Puerto Rico 00902
        Tel:    787-977-5050
        Fax:   787-977-5090
        E-mail:  phammer@estrellallc.com

126609002\00293226.v1